RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
Federal Bar No. MO-7088
Attorneys for Defendant, Chicago Title Insurance Company

| | |
|---|---|
| RD LEGAL FUNDING PARTNERS, LP and RD LEGAL FUNDING, LLC,<br><br>PLAINTIFFS,<br><br>vs.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>DEFENDANT. | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY<br><br>CIVIL ACTION NO.<br><br>**NOTICE OF REMOVAL** |

TO:     Clerk
         United States District Court, District of New Jersey
         M.L. King, Jr. Federal Bldg. & U.S. Courthouse
         50 Walnut Street
         Newark, New Jersey 07102

WITH NOTICE TO:

         Clerk
         New Jersey Superior Court, Law Division
         Essex County
         Veteran's Courthouse
         50 West Market Street
         Newark, New Jersey 07102

         Jennifer Suh, Esq.
         Hughes Hubbard & Reed LLP
         One Battery Park Plaza
         New York, New York 10004-1482

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §1441 and §1446, defendant Chicago Title Insurance Company, ("Chicago Title"), hereby gives notice of removal of this action, which was commenced in the New Jersey Superior Court, Law Division, Essex County, Docket No. ESX-L-8523-19 ("New Jersey Superior Court Action"), to the United States District Court for the District of New Jersey, with full reservation of any and all rights, claims, remedies, objections and defenses.

As grounds for this removal, Chicago Title states the following:

1.     Plaintiff RD Legal Funding Partners, LP (the "Fund") is a Delaware limited partnership with a principal place of business at 45 Legion Drive, Cresskill, New Jersey 07626.

2.     Plaintiff RD Legal Funding, LLC ("RDLF" and with the Fund "Plaintiffs") is a New Jersey limited liability company with a principal place of business at 45 Legion Drive, Cresskill, New Jersey 07626.

3.     Chicago Title is a Florida Corporation with a principal place of business located at 601 Riverside Avenue, Jacksonville, Florida 32204.  Chicago Title is a title insurance company licensed to do business in the State of New Jersey.

4.     Plaintiffs filed this action in the New Jersey Superior Court, Law Division, Essex County.

5.     This is a civil action over which the District Court possesses original jurisdiction under 28 U.S.C. §1332(a), and therefore, Chicago Title is entitled to remove this action to the District Court pursuant to 28 U.S.C. §1441.

6.     This action is removed on the basis of diversity jurisdiction.  This action is between citizens of different states.  Specifically, the Fund is a Delaware

limited partnership, RDLF is a New Jersey Corporation, and Chicago Title is a Florida Corporation.

7.      The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.   This is established in Paragraph 55 of Plaintiffs' complaint wherein Plaintiffs allege that they "have suffered monetary damages in excess of $15 million."

8.      On November 21, 2019, Chicago Title acknowledged service of a copy of the Summons, Complaint, Civil Case Information Statement, and Track Assignment in the New Jersey Superior Court Action. Copies of each of these documents, along with the filed Acknowledgment of Service is attached hereto as Exhibit A.  To Chicago Title's knowledge, no further pleadings have been filed in the New Jersey Superior Court Action.

9.      This Notice of Removal is timely.  See 28 U.S.C. §1446(b).

10.      Pursuant to 28 U.S.C. §1446(a), Chicago Title has attached hereto, as Exhibit A, true and complete copies of all process, pleadings and orders served upon it in the New Jersey Superior Court Action and incorporates them herein as part of this Notice of Removal.

11.      A copy of this Notice of Removal is being served on Plaintiffs and filed contemporaneously with the Clerk of the New Jersey 'Superior Court, Law Division, Essex County.

12.      The Complaint contains a jury demand.

13.     Venue is proper pursuant to 28 U.S.C. § 1441(a) because the Superior Court of New Jersey, Essex County is located within the district of the United States District Court of New Jersey.

14.     For the foregoing reasons, Chicago Title hereby removes this action to the United States District Court for the District of New Jersey.

WHEREFORE, Chicago Title requests that this civil action proceed in the United States District Court for the District of New Jersey as an action properly removed thereto.

RIKER, DANZIG, SCHERER,
HYLAND & PERRETTI LLP
Attorneys for Defendant
Chicago Title Insurance Company

By:_____
Michael R. O'Donnell

Dated: December 19, 2019

4

## CERTIFICATE OF FILING AND SERVICE

I certify that on the date indicated herein I caused one copy of this Notice of Removal and a Civil Cover Sheet to be filed by electronic filing with the Clerk, United States District Court, District of New Jersey, M.L. King, Jr. Federal Bldg. & U.S. Courthouse, 50 Walnut Street, Newark, New Jersey 07102.   Contemporaneously therewith, I have caused a copy of these documents to be filed electronically with the Clerk, New Jersey Superior Court, Law Division, Essex County, Veteran's Courthouse, 50 West Market Street, Newark, New Jersey 07102 and to be sent under separate cover by e-mail and Federal Express to Plaintiffs' counsel, Jennifer Suh, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004-1482.

_____

Jonathan M. Sandler

Dated: December 19, 2019

# EXHIBIT A

5100719v1

Jennifer Suh (Attorney ID No: 041442011)
Terence Healy (to be admitted *pro hac vice*)
Kenneth M. Katz (to be admitted *pro hac vice*)
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Fax: (212) 422-4726
jennifer.suh@hugheshubbard.com

*Attorneys for Plaintiffs*
RD Legal Funding Partners, LP and RD Legal Funding, LLC

|  |  |
|---|---|
| RD LEGAL FUNDING PARTNERS, LP and RD LEGAL FUNDING, LLC, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: ESSEX COUNTY |
| Plaintiffs, | *Civil Action* |
| v. | **COMPLAINT** |
| CHICAGO TITLE  INSURANCE COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. |  |

Plaintiffs RD Legal Funding Partners, LP (the "Fund") and RD Legal Funding, LLC

("RDLF"), by and through counsel, allege against Defendant Chicago Title Insurance Company

("Chicago Title") as follows:

## NATURE OF THE ACTION

1.      This is a case for breach of contract.  Chicago Title issued a title policy no.

72107-2834094 (the "Policy") insuring a second lien on certain properties in Hudson County

(the "Properties").  When title to those Properties was held to be unmarketable and the second

lien invalid, Chicago Title refused to honor its obligations under the Policy.

2.      Chicago Title issued policies insuring both first and second liens on the

Properties.  The first lien was held by Centrum Financial Services, Inc. ("Centrum").  The

second lien was held initially by Cynthia Licata.  Plaintiffs are the successors-in-interest to Cynthia Licata under the second lien.

3.       Before issuing these policies, Chicago Title knew that a real estate developer named Peter Mocco and his wife (the "Moccos") claimed ownership of the Properties.  Knowing this fact, Chicago Title nonetheless chose to issue title policies—and to collect the associated premiums—on the subject Properties.

4.       When the Moccos disputed title, Centrum (as first lien holder) sought coverage under its policy and sued Chicago Title.  Chicago Title settled with Centrum and, as subrogee, stepped into its shoes in the then ongoing litigation against the Moccos to determine ownership of the Properties.

5.       Following a long trial, the Superior Court of New Jersey, Law Division – Essex County found the Moccos owned the Properties and held that the first lien was null and void.  On July 24, 2015, the court further held that the second lien was void and unenforceable.  The Appellate Division affirmed this decision on June 5, 2018, and the Supreme Court of New Jersey denied the parties' motion for leave to appeal on December 6, 2018.

6.       The Policy at issue provides the holders of the second lien protection against any defects or encumbrances in title to the Properties.  It stated – in bold typeface and capital letters – that, "**THIS POLICY INSURES THAT THE MORTGAGE HEREIN IS A VALID SECOND LIEN.**"  The second lien was invalid and the Properties were unmarketable, causing Plaintiffs the losses described below.

7.       Plaintiffs are entitled to the coverage the Policy provides.  Chicago Title, having issued the Policy insuring against any losses from defects in title to the Properties and/or the invalidity of any related mortgages, must honor its obligations under the contract.

8.      Despite the order of the New Jersey Superior Court invalidating the insured mortgage, Chicago Title has refused to provide coverage to Plaintiffs in breach of its obligations under the Policy, causing Plaintiffs to sustain losses.

## THE PARTIES

9.      The Fund is a Delaware limited partnership with a principal place of business at 45 Legion Drive, Cresskill, New Jersey 07626.  The Fund is a private investment partnership which seeks to generate stable returns for its investors while maintaining capital through, among other means, purchasing receivables from law firms and providing lines of credit and working capital to law firms.

10.     RDLF is a New Jersey limited liability company with a principal place of business at 45 Legion Drive, Cresskill, New Jersey 07626.  RDLF identifies, originates, and purchases legal receivables on behalf of the Fund for the benefit of its investors.  RDLF also provides due diligence, underwriting, and asset verification services to the Fund.

11.     Defendant Chicago Title is a Florida corporation with a principal place of business at 601 Riverside Avenue, Jacksonville, Florida 32204.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the parties and the subject matter of this lawsuit because Plaintiffs are residents of New Jersey, the Properties are in New Jersey, and Chicago Title regularly transacts business in New Jersey.

13.     Venue is proper in this County pursuant to *R*. 4:3-2 because Chicago Title maintains an office in and conducts business in Essex County, New Jersey.

## THE POLICY

14.     Under the Policy, Chicago Title agreed to provide the named insured or its

assignees coverage "against loss or damage, not to exceed the Amount of Insurance stated in

Schedule A, sustained or incurred by the insured by reason of," *inter alia*, the following:

>       1.     Title to the Estate or interest described in Schedule A being vested
> other than as stated therein;
>
>       2.     Any defect in or lien or encumbrance on the title;
>
>                                       * * *
>
>       5.     The invalidity or unenforceability of the lien of the insured
> mortgage upon the title;
>
>                                       * * *
>
>       8.     The invalidity or unenforceability of any assignment of the insured
> mortgage, provided the assignment is shown in Schedule A, or the failure
> of the assignment shown in Schedule A to vest title to the insured
> mortgage in the named insured assignee free and clear of all liens.

(A copy of the Policy is attached hereto as **Exhibit A**.)

15.     The Policy identifies the "Insured" as "Cynthia Licata." The Policy further

defines "Insured" to include "the owner of the indebtedness secured by the insured mortgage and

*each successor in ownership of the indebtedness*." (Emphasis added.)

16.     The "Amount of Insurance" under the Policy is $22,950,833.50.

17.     Schedule A of the Policy states:  "[t]itle to the estate or interest in the land is at

date of policy vested in: SWJ Holdings, LLC IV, a New Jersey Limited Liability Company,

dated May 26, 2006, recorded June 2, 2006 in the Hudson County Clerk/Register's Office in

Deed Book 7908, Page 170," and that "[t]he estate or interest in the land which is encumbered by

mortgage is:  Fee Simple."

18.     Schedule A identifies the mortgage that was insured under the Policy as follows:

- 4 -

ESX-L-008523-19   11/18/2019 6:50:48 PM   Pg 5 of 12 Trans ID: LCV20192127095

Mortgage made by SWJ Holding LLC, to Cynthia Licata, dated May 26, 2006, recorded June 2, 2006 in the Hudson County Clerk/Register's Office in Mortgage Book 14448, Page 322 in the amount of $22,950,833.50

Collateral [sic] Assignment of Leases, Rents and Profits, from SWJ Holdings, LLC, to Cynthia Licata, dated May 26, 2006, recorded June 2, 2006 in the Hudson County Clerk/Register's Office in Mortgage Book 14448, Page 332.

19.     Schedule A provides, in bold typeface and in capital letters, that "**THIS POLICY INSURES THAT THE MORTGAGE HEREIN IS A VALID SECOND LIEN.**"

20.     The Fund, by virtue of an assignment taken in the course of a financing transaction, is the successor in ownership of the indebtedness under the Policy. The Fund assigned its rights under the Policy to RDLF and, together, Plaintiffs are insureds entitled to coverage under the Policy.

### PLAINTIFFS' FINANCING OF THE COHEN FIRM AND ASSIGNMENT OF THE MORTGAGE AND THE POLICY

21.     As part of its regular investment activities on behalf of its investors, the Fund purchased receivables owed to the law firm of Cohen, Jayson & Foster, P.A. (together with its successors-in-interest, the "Cohen Firm"). These receivables included amounts that James J. Licata, the husband of Cynthia Licata, owed to the Cohen Firm from its representation of Mr. Licata in certain legal proceedings.

22.     In connection with the Fund's investment in the receivables, on or about October 10, 2007, the Fund and the Cohen Firm entered into the Master Assignment and Sale Agreement (the "Original Master Agreement"). The Original Master Assignment was amended on May 18, 2009 (the "Amended Master Agreement"; together with the Original Master Agreement, the "Master Agreement"). The Fund and the Cohen Firm (including certain parties related to the Cohen Firm) also executed, pursuant to the Master Agreement, certain schedules concerning the Legal Fees owed by or anticipated from Mr. Licata (the "Schedules").

- 5 -

23.     The Master Agreement and the Schedules provided a framework by which the Fund invested in the Cohen Firm's receivables.  For an agreed purchase price, the Cohen Firm assigned its right to anticipated legal fees (the "Legal Fees") to the Fund, and the Fund provided the Cohen Firm with immediate funds.  The Cohen Firm also agreed that it would repurchase the Legal Fees from the Fund to the extent the Cohen Firm was unable to collect the Legal Fees within a certain period.

24.     To secure amounts the Cohen Firm owed the Fund under the Master Agreement, the Cohen Firm granted a security interest to the Fund in all of its present and future assets and properties.  In particular, the Schedules included an "Assignment to [the Fund] of Cynthia Licata Mortgage & Mortgage Note dated May 26, 2006 relative to loan of $22,950,833.50 to SWJ."

25.     And on October 28, 2007, East Coast Investments, LLC ("ECI")—an entity controlled by partners of the Cohen Firm and which had received a prior assignment of the Cynthia Licata Mortgage, Mortgage Note (including the indebtedness) and the Policy on June 28, 2007—assigned the Mortgage, Mortgage Note and the Policy to the Fund.  The parties to the assignment understood and agreed that the assignment was made to provide the Fund with "additional collateral and as a further guaranty of payment" in connection with amounts advanced by the Fund under the Master Agreement and Schedules.

26.     The Fund took the Assignment of the Mortgage, Mortgage Note and the Policy in good faith, for value, and with the knowledge and in reliance on the fact that Chicago Title had concluded that the title to the Properties and the validity of the Mortgage based thereon were of insurable quality, and that Chicago Title had issued the Policy for nearly $23 million.

27.     On July 23, 2009, ECI executed an amendment of the assignment.  On December 4, 2009, the Fund recorded the assignment and the amended assignment in the Hudson County

Clerk/Register's Office in Mortgage Book 1176, Page 336 and Mortgage Book 1176, Page 289, respectively.

28.     The Fund assigned to RDLF, among other things, its right to the Mortgage and the Policy on November 30, 2012.

## PLAINTIFFS' ATTEMPTS TO EXERCISE
## THEIR RIGHTS UNDER THE ASSIGNMENT

29.     The Cohen Firm breached its repayment obligations to the Fund.  To recoup its losses, the Fund sought to exercise its rights by attempting to foreclose on the Properties.

30.     In late February and early March 2014, SWJ Holdings, LLC ("SWJ")—the record owner of the Properties that had granted the Mortgage to Cynthia Licata—and a related entity, SWJ Management, LLC ("SWJ Management"), filed for Chapter 11 bankruptcy in Delaware. Those proceedings were subsequently transferred to Connecticut.[1]

31.     On June 20, 2014, the Fund filed motions in the SWJ and the SWJ Management bankruptcy proceedings seeking relief from the automatic stay so that the Fund could commence an action in New Jersey to foreclose on the Mortgage on the Properties.  However, following these motions, the bankruptcy court dismissed the SWJ proceeding and, in the SWJ Management proceeding, referred the Fund to other ongoing proceedings concerning the ownership of the Properties.

## THE FUND'S CLAIM UNDER THE POLICY
## AND THE INVALIDITY OF THE MORTGAGE

32.     Shortly after the Fund filed motions in the SWJ and SWJ Management bankruptcy proceedings, it was contacted by James A. Scarpone, an attorney for the Moccos.

---

[1]     *In re SWJ Holdings LLC*, Case No. 14-50523 (Bankr. D. Conn.) and *In re SWJ Management LLC*, Case No. 14-50526, Doc No. 18 (Bankr. D. Conn.).

Mr. Scarpone claimed that SWJ never owned the Properties and therefore was without authority to grant the Mortgage.

33.     Mr. Scarpone also advised the Fund that Chicago Title had already paid out the proceeds of the title policy it had issued to Centrum (*i.e.*, the first lien holder on the Properties), and that Chicago Title was now subrogated to the rights of Centrum and was prosecuting Centrum's claims in a quiet title action that the Moccos commenced with regard to the Properties against Cynthia and James Licata and other entities. *See Titan Management, L.P. v. Licata*, ESX-L-7709-13 (N.J. Super. Ct., Essex Cty.) ("the Mocco Action").

34.     On July 8, 2014, the Fund gave notice to Chicago Title that claims had been made by interested parties attacking the validity of the Mortgage and made claim under the Policy.

35.     By this time, Chicago Title had long known about the dispute between the Moccos and the Licatas. By December 13, 2006 – before the Fund acquired the Mortgage – Chicago Title had notified Centrum of litigation concerning the ownership of the Properties. (Compl. ¶ 86, *Centrum Financial Services, Inc. v. Chicago Title Ins. Co.*, No. 2:09-cv-03300 (D.N.J. July 6, 2009).) After Chicago Title refused to honor its policy on the mortgage held by Centrum, on July 6, 2009, Centrum commenced an action against Chicago Title. Chicago Title settled Centrum's claims and that action was dismissed on July 13, 2011.

36.     Similarly, in 2007 and 2010, two entities that held mortgages on other properties in dispute between the Moccos and Licatas, and to which Chicago Title issued insurance policies, also sued Chicago Title. *See* Compl., *Sky Land Investments, LLC v. Chicago Title Ins. Co.*, No. 2:07-cv-01328 (D. Ariz. July 10, 2007), *transferred to*, No. 2:07-cv-05844 (D.N.J.); Compl., *Dare Investments, LLC v. Chicago Title Ins. Co.*, No. 2:10-cv-06088 (D.N.J. Nov. 22,

2010).  Before the Fund made its claim under the Policy, Chicago Title had also settled those claims.

37.    By letter dated October 9, 2014, Chicago Title denied the Fund's indemnification claim under the Policy because, *inter alia*, the Mortgage had not been declared invalid or unenforceable in the Mocco Action and, according to Chicago Title, the Fund's claim was not yet ripe.  By this time, however, Chicago Title already had settled with three parties to which it insured the validity of mortgages on properties subject to the ownership dispute between the Moccos and the Licatas.

38.    In a letter dated February 24, 2015, Chicago Title reiterated its denial of the Fund's claim and stated that "[u]ntil such time as [the Mortgage] has been declared invalid, Chicago Title has no liability under the Policy."

39.    On June 5, 2015, the Superior Court of New Jersey in the Mocco Action entered an Order and Judgment stating that the "Moccos are the owners of 100% of the legal equitable interest in [the entity holding the Properties]."  That Order and Judgment also declared that SWJ's deed on the Properties was void and certain mortgages on the Properties were null and void.  By the date of this Order and Judgment, the Cohen Firm had owed the Fund more than $15 million.

40.    By a Supplemental Order and Judgment dated July 24, 2015, the court declared the Mortgage "void and unenforceable" clarifying its June 5, 2015 Order and Judgment and confirming that the Mortgage was invalid.

41.    The Supplemental Order and Judgment stated:

1.    It is adjudged and declared that the mortgage executed by SWJ Holdings, LLC in favor of Cynthia Licata at the May 25-26, 2006 closing (recorded with the Hudson County Register at Book 14448, Page 00322) is hereby declared to be void and unenforceable and shall be so marked on

the land records of Hudson County, either by recordation of this Order or by such other methods as the Hudson County Register shall deem appropriate.

2.      It is further adjudged and declared that the assignment of the above-referenced mortgage by Cynthia Licata to East Coast Investments, LLC is hereby declared to be void and unenforceable and shall be so marked on the land records of Hudson County, either by recordation of this Order or by such other methods as the Hudson County Register shall deem appropriate.

42.      On August 18, 2016, Plaintiffs demanded coverage under the Policy noting that their claim was now ripe in light of the Court's July 24, 2015 order.

43.      On September 21, 2016, Chicago Title again claimed that the claim was not ripe in light of the then-pending appeal of the Superior Court's June 5, 2015 order and refused to honor the Policy and indemnify Plaintiffs for the losses they suffered as a result of the invalid Mortgage.

44.      By decision dated June 5, 2018, the New Jersey Appellate Division affirmed the Superior Court's order invalidating the Mortgage.

45.      On December 6, 2018, the Supreme Court of New Jersey denied the motions of Centrum and other lenders seeking leave to appeal the Appellate Division's order.

## COUNT I – BREACH OF CONTRACT

46.      Paragraphs 1 through 45 are incorporated by reference as if set forth in full.

47.      The Policy is a valid contract between the parties.

48.      The Policy provides coverage for loss sustained by the insured or its assignees due to, *inter alia,* the invalidity or unenforceability of any assignment of the Mortgage and invalidity or unenforceability of the lien of the Mortgage upon the title.

49.      The Mortgage has been declared invalid and unenforceable.

50.     New Jersey law provides that once a title insurer is made aware of a claimed title defect affecting the policyholder's interest, the title insurer has a reasonable time in which to remove the defect or else is deemed in breach of the title policy.

51.     Chicago Title has had a reasonable time to remove the defect.  In fact, Chicago Title tried and failed to remove the title defect.

52.     Plaintiffs have suffered an actual loss due to the invalidity of the Mortgage.  If the Mortgage had been valid, Plaintiffs would have had the right to foreclose on the Properties, the value of which is sufficient to cover some or all of Plaintiffs' loss.

53.     Without the ability to foreclose on the Properties, Plaintiffs cannot recoup their loss.

54.     Chicago Title materially breached its obligations under the Policy by denying Plaintiffs' indemnification claim despite the fact that the Mortgage has been declared invalid.

55.     As a direct and proximate result of Chicago Title's breach of contract, Plaintiffs have suffered monetary damages exceeding $15 million due to the principal and interest owed by the Cohen Firm, which was secured by the invalidated Mortgage.

56.     Plaintiffs have performed all of their contractual obligations under the Policy.

WHEREFORE, Plaintiffs demand judgment against Defendant Chicago Title for damages, together with interest, all reasonable expenses, including attorneys' fees and Court costs, and such other and further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues.

- 11 -

## RULE 4:5-1 CERTIFICATION OF NO OTHER ACTIONS

Pursuant to *R.* 4:5-1(b)(2), I hereby certify, to the best of my knowledge, information and belief, that the matter in controversy referred to in the within pleading is not the subject of any other action pending in any other court or of a pending arbitration proceeding, and it is not contemplated that the said matter in controversy shall be the subject of any other action or arbitration proceeding.

HUGHES HUBBARD & REED LLP
*Attorneys for Plaintiffs*

By: _____
    Jennifer Suh
    Terence Healy (to be admitted *pro hac vice*)
    Kenneth M. Katz (to be admitted *pro hac vice*)

Dated: November 18, 2019

# EXHIBIT A

*AMERICAN LAND TITLE ASSOCIATION*
*LOAN POLICY*
*(10-17-92)*

## Policy No. 72107- 2834094

# CHICAGO  TITLE  INSURANCE  COMPANY

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*In Witness Whereof*, CHICAGO TITLE INSURANCE COMPANY has caused this policy to be signed and sealed as of Date of Policy shown in Schedule A, the policy to become valid when countersigned by an authorized signatory.

CHICAGO TITLE INSURANCE COMPANY
By:

President

By:

Secretary

# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or

   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

      (a) to timely record the instrument of transfer; or

      (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

# CONDITIONS AND STIPULATIONS

## 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

   (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

   (ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

   (iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) **Amount of Insurance.** The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the Indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

## 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

## 5. PROOF OF LOSS OR DAMAGE

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to

provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) **To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.**

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) **To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.**

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs (b)(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 7. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations, or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8. LIMITATION OF LIABILITY**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10. LIABILITY NONCUMULATIVE**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11. PAYMENT OF LOSS**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT**

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights

sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13. ARBITRATION**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15. SEVERABILITY**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16. NOTICES, WHERE SENT**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at the issuing office or to:

Chicago Title Insurance Company
Claims Department
171 North Clark Street
Chicago, Illinois 60601-10500

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE A

**POLICY NUMBER:** 72107-2834094

**Amount of Insurance:** $22,950,833,50

**Date of Policy:**      June 2, 2006

**Office File Number:**   HTA-2006-162

1.  **Name of Insured:**

    Cynthia Licata

2.  **Title to the estate or interest in the land is at date of policy vested in:**

    SWJ Holdings LLC, a Delaware Limited Liability Company, by deed from First Connecticut Holdings, LLC, IV, a New Jersey Limited Liablity Company, dated May 26, 2006, recorded June 2, 2006 in the Hudson County Clerk/Register's Office in Deed Book 7908, Page 170.

3.  **The estate or interest in the land which is encumbered by mortgage is:**

    Fee Simple

4.  **The insured mortgage and assignments thereof, if any, are described as follows:**

    Mortgage made by SWJ Holding LLC, to Cynthia Licata, dated May 26, 2006, recorded June 2, 2006 in the Hudson County Clerk/Register's Office in Mortgage Book 14448, Page 322 in the amount of $22,950,833.50

    Collaterol Assignment of Leases, Rents and Profits, from SWJ Holdings, LLC., to Cynthia Licata, dated May 26, 2006, recorded June 2, 2006 in the Hudson County Clerk/Register's Office in Mortgage Book 14448, Page 332.

    **THIS POLICY INSURES THAT THE MORTGAGE HEREIN IS A VALID SECOND LIEN.**

    **SEE SCHEDULE C, DESCRIPTION ATTACHED.**

Issued by:
**Horizon Title Agency**
**65 State Highway 4 - Suite 3**
**River Edge, NJ 07661**
**Telephone: 201-226-0096 Fax: 201-226-0093**

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

**Policy Number** 72107-2834094

### SCHEDULE C, D E S C R I P T I O N

All those certain lots, tracts or parcels and land and premises, situate, lying and being in the Township of North Bergen and the City of Jersey City, County of Hudson and State of New Jersey, being further described as follows:

PARCEL A

BEING known and designated as Condominium Units (see below for unit numbers) situate in "Bergenwood Commons", a Condominium, together with their undivided percentage interest in the general common elements of said condominium, together with their parking unite numbers, with their undivided percentage interest in the general common elements of said condominium in accordance with and subject to the terms, limitations, conditions, covenants, restrictions, easements, agreements and other provisions set forth in that certain Master Deed for "Bergenwood Commons" a condominium, dated December 3, 1987, recorded December 4, 1987 in the Hudson County Register's Office in Deed Book 3850, Page 71, et seq, and by First amendment ot Master Deed dated January 20, 1988, and recorded January 27, 1988 in Deed Book 3890, Page 163, et seq., and be Second Amendment recorded May 22, 1989 in Deed Book 4146, Page43, as the same may now or lawfully be amended.

UNIT NUMBERS:

Units 8-1A, 8-1B, 8-1C, 8-1D, 8-2A, 8-2B, 8-2C, 8-2D, 8-3A, 8-3B, 8-3C, 8-3D in 4308 Smith Street.
Units 9-1A, 9-1B, 9-1C, 9-1D, 9-2A, 9-2B, 9-2C, 9-2D, 9-3A, 9-3B, 9-3C, 9-3D in 4312 Smith Street
Unit TH5 - 4304 Smith Street
Units 10-1A, 10-1B, 10-1C, 10-1D, 10-2A, 10-2B, 10-3A, 10-3C, 10-3D - 4313 Smith Street
Units TH6 and TH6 - 4307 Smith Street.

Being known as Lots 12C8-1A, 12C-8-1B, 12C8-1C, 12C-8-1D, 12-C8-2A, 12-C8-2B. 12C8-2C, 12-C8-3A, 12-C8-3B, 12-C8-3C, 12-C8-3D, 12-C9-1A, 12-C9-1B, C9-1C, 12-C9-1D, 12-C9-2A, 12-C9-2B, 12-C9-2C, 12-C9-2D, 12-C9-3A, 12-C9-3B, 12-C9-3C, 12-C9-3D, 12-C10-1A, 12-C10-1B, 12-C10-1C, 12C10-2A, 12-C10-2B, 12-C10-2C, 12-C10-3A, C12-103C in Block 142, Lot 12CTH-5D in Block 142 and Lots 33-CTH-6 AND 33 CTH-6D in Block 143 on the current tax map of the Township of North Bergen, Hudson County, New Jersey.

PARCEL B

TRACT ONE:

BEGINNING at a point in the westerly line of Washington Street, distant southerly 26.60 feet from the intersection of the westerly line of Washington Street and the southerly line of Sussex Street and from said beginning point running thence:

1.     South 15 degrees 15 minutes West along the westerly line of Washington Street, 24.98 feet to a

Issued by:
**Horizon Title Agency**
**65 State Highway 4 - Suite 3**
**River Edge, NJ 07661**
**Telephone: 201-226-0096 Fax: 201-226-0093**

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

point; thence

2.   North 75 degrees West and parallel with the southerly line of Sussex Street, 98.00 feet to a point; thence

3.   North 15 degrees 15 minutes East and parallel with the westerly line of Washington Street, 24.98 feet to a point; thence

4.   South 75 degrees East and along the dividing line between the building erected on the premises herein described and the building erected on the premises adjoining thereto to the North, 98.00 feet to the westerly line of Washington Street to the point and place of BEGINNING.

TRACT TWO:

BEGINNING at the intersection of the westerly line of Washington Street and the southerly line of Sussex Street and from said beginning point running thence:

1.   South 15 degrees 15 minutes West along the westerly line of Washington Street, 26.60 feet to a point; thence

2.   North 75 degrees West along the dividing line between the building erected on the premises adjoining thereto the south, 98.00 fee to a point; thence

3.   North 15 degrees 15 minutes East and parallel with the westerly line of Washington Street, 26.60 feet to a point in the southerly line of Sussex Street; thence

4.   South 75 degrees East along the said southerly line of Sussex Street, 98.00 feet to the point and place of BEGINNING.

Being known as Lots G and H in Block 99 on the current tax map of the City of Jersey City, Hudson County, New Jersey,

PARCEL C

On a certain map entitled "Map No. 1" (Filed Map No. 851), showing the partition of property in Jersey City, Hudson County, N.J., belonging to the Estate of Dudley S. Gregory, deceased, made by Andrew Clerk, David Smith and James R. Thompson, Commissioners appointed by the Court of Chancery of New Jersey, is known and distinguished as Lot 17 in block 100, and which on the map of Powles Hook made by Joseph F. Mangin for the Associates of the Jersey Company is known and distinguished as Lot 58 in Block 30 fronting on the northerly side of Sussex Street, said lot being 25 feet wide in front and rear and 99 feet, 9 inches deep on each side.

Being known as Lot 58 in Block 100 on the current tax map of the City of Jersey City, Hudson County and State of New Jersey.

Issued by:
**Horizon Title Agency**
**65 State Highway 4 - Suite 3**
**River Edge, NJ 07661**
**Telephone: 201-226-0096 Fax: 201-226-0093**

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

PARCEL D

BEGINNING at a point which is the intersection of the easterly line of Jersey Avenue with the northerly line of Mercer Street and from thence running;

1. South 52 degrees 0 minutes East, 24.60 feet along said northerly line of Mercer Street to a point; thence

2. North 48 degrees 12 minutes East, to, through and beyond a party wall standing partly on the premises herein described and partly on the premises next adjoining to the East, 55.13 feet to a point; thence

3. South 52 degrees 0 minutes East, 20.40 feet to a point; thence

4. North 48 degrees 12 minutes East, 44.82 feet to a point; thence

5. North 52 degrees 0 minutes 00 seconds West, 24.00 feet to a point; thence

6. North 48 degrees 12 minutes East, to, through and beyond a party wall standing partly on the premises herein described and standing partly on the premises next adjoining to the East, 100.00 feet to a point in the southerly line of Wayne Street; thence

7. North 52 degrees 0 minutes Wes, 21.00 feet along said southerly line of Wayne Street to its point of intersection with the easterly line of Jersey Avenue; thence

8. South 48 degrees 12 minutes West along the easterly line of Jersey Avenue, 200.00 feet to the point and place of BEGINNING.

Being known as Lots A and K2, in Block 272 on the current tax map of the City of Jersey City, Hudson County, New Jersey.

PARCEL E

BEGINNING at a point in the southerly side of Wayne Street, distant 73 feet easterly from the corner formed by the intersection of the southerly side of Wayne Street with the easterly side of Jersey Avenue and from thence running:

1. Southerly and parallel with the easterly line of Jersey Avenue, 100 feet to a point; thence running

2. Easterly and parallel with the southerly line of Wayne Street, 32 feet to a point; thence running

3. Southerly and parallel with the easterly line of Jersey Avenue, 20 feet to a point; thence running

4. Easterly, parallel with the southerly line of Wayne Street, 60 feet to a point; thence running

5. Northerly, parallel with the easterly line of Jersey Avenue, 20 feet to a point; thence

Issued by:
**Horizon Title Agency**
65 State Highway 4 - Suite 3
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

6.      Easterly, parallel with the southerly line Wayne Street,, 7 feet to a point; thence running

7.      Northerly, parallel with the easterly line of Jersey Avenue, 100 feet to the southerly line of Wayne Street; 99 feet to the point or place of BEGINNING.

Being known as Lot E in Block 272 on the current tax map of the City of Jersey City, Hudson County, New Jersey.

PARCEL F

BEGINNING at a point in the northwesterly line of Warren Street, distant North 30 degrees 20 minutes East, 61.00 feet from the intersection of the said northwesterly line of Warren Street with the northeasterly line of Morris Street; thence

1.      South 30 degrees 20 minutes West, 61.00 feet; thence

2.      North 59 degrees 40 minutes West, 94.10 feet; thence

3.      North 30 degrees 20 minutes East, 61.00 feet; thence

4.      South 59 degrees 40 minutes East, 94.10 feet to the point or place of BEGINNING.

Being known as Lots H-1, J-1, K-! and 80 in Block 132 on the current tax map of the City of Jersey City, Hudson County, New Jersey.

PARCEL G

TRACT ONE

COMMENCING at a point on the easterly side of Jersey Avenue, distant 50 feet southerly from the intersection of Jersey Avenue and Railroad Avenue; running thence

1.      Easterly, parallel with Railroad Avenue, 100 feet; thence

2.      Southerly, parallel with Jersey Avenue, 25 feet; thence

3.      Westerly, 100 feet to the easterly side of Jersey Avenue, and thence

4.      Along said easterly side of Jersey Avenue, 25 feet to the place of BEGINNING.

Being known as Lot C in Block 273 on the current tax map of the City of Jersey City, Hudson County. New Jersey.

TRACT TWO

Issued by:
**Horizon Title Agency**
65 State Highway 4 - Suite 3
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

WHICH on a map entitled "Commissioners Map No. 1 of lands in Jersey City, New Jersey, showing the division thereof between the heirs of Cornelius Van Vorst, deceased," filed in the Office of the Register of Hudson County, is known and designated as Lot 4 in Block 40 and fronting on the easterly side of Jersey Avenue; said lot is more particularly described as follows:

BEGINNING at a point on the easterly side of Jersey Avenue, 100 feet north from the north side of Wayne Street; thence

1.     East and parallel with Wayne Street, 100 feet; thence

2.     North and parallel with Jersey Avenue, about 26 feet 5 inches to the line or lot of another individual; thence

3.     West, parallel with Wayne Street, 100 fee to the east side of Jersey Avenue; thence

4.     South along the east side of Jersey Avenue, about 26 feet 5 inches to the place of BEGINNING, upon which said lot fronting Jersey Avenue, stands a brick building covering the whole front of said lot.

Premises are also described as follows:

BEGINNING at a point in the easterly side of Jersey Avenue, at a point therein 100 feet northerly from its intersection with the northerly line of Wayne Street, and from thence

1.     South 62 degrees 55 minutes East, 100 feet to a point; thence

2.     North 27 degrees 10 minutes East, 26 feet 5 inches to a point; thence

3.     North 62 degrees 55 minutes West, to, through and beyond the party wall standing partly on the premises herein described and partly on the premises next adjoining thereto to the North, 100 feet to a point in the easterly side of Jersey Avenue; thence

4.     South 27 degrees 10 minutes West, along the easterly side of Jersey Avenue, 26 feet, 5 inches to the point or place of BEGINNING.

Being known as Lot D in Block 273 on the current tax map of the City of Jersey City, Hudson County, New Jersey.

Issued by:
**Horizon Title Agency**
**65 State Highway 4 - Suite 3**
**River Edge, NJ 07661**
**Telephone: 201-226-0096 Fax: 201-226-0093**

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE B

### Part I

**Policy Number** 72107-2834094

**This policy does not insure against loss or damage by reason of the following:**

1. Any facts about the land which a correct survey would disclose, and which are not shown by the public record.

2. This property is subject to the current year's taxes levied or to be levied, and not yet certified to by the Hudson County Board of Taxation in accordance with Chapter 397, Laws of 1941, as amended and supplemented.

3. Terms, conditions, limitations, covenants, restrictions and other provisions as set forth in Master Deed and Deed Book 3850, page 71, and all amendments or supplements thereto. The Policy will insure that violations, if any, will not work a forfeiture or reversion of title.

4. Mortgage held by GMAC Commercial Mortgage, as Master Servicer for Lasalle National Bank (Capmark Division). Escrow being held for the same against final disposition.

5. Mortgage made by SWJ Holdings, LLC. to Centrum Financial Services, Inc., dated May 26, 2006, recorded June 2, 2006 in the Hudson County Clerk/Register's Office in Mortgage Book 14448, Page 194, in the amount of $5,000,000.00.
   Said mortgage was assigned to First Mutual Bank, by assignment recorded June 2, 2006 in Assignment Book 1115, Page 90.

6. Mortgage made by SWJ Holdings, LLC, to Centrum Financial Services, Inc., dated May 26, 2006, recorded June 2, 2006 in the Hudson County Clerk/Register's Office in Mortgage Book 14448, Page 236, in the amount of $5,000,000.00.
   Said mortgage was assigned to KeyBank National Association, by assignment recorded June 2, 2006 in Assignment Book 1115, Page 92.

7. Mortgage made by SWJ Holdings, LLC, to Centrum Financial Services, Inc., dated May 26, 2006, recorded June 2, 2006 in the Hudson County Clerk/Register's Office in Mortgage Book 14448, Page 279, in the amount of $5,000,000.00.
   Said mortgage was assigned to KeyBank National Association, by assignment recorded June 2, 2006 in Assignment Book 1115, Page 94.

8. Subject to the terms. conditions, covenants, court orders, etc, as set forth in United States Bankruptcy Court, District of Connecticut, Bridgeport Division Case No. 02-50852 (AHWS), and the Asset Purchase Agreement thereunder.

Issued by:
**Horizon Title Agency**
**65 State Highway 4 - Suite 3**
**River Edge, NJ 07661**
**Telephone: 201-226-0096 Fax: 201-226-0093**

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

9. Claims of Condominium Unit Liens – re: Bergenwood Commons Condominium

Claims of Liens filed June 15, 1998 in Mortgage Books 6597, Page 202, Book 6597, Page 204, Book 6597, Page 206, Book 6597, Page 208, Book 6597, Page 210, Book 6597, Page 212, Book 6597, Page 214, Book 6597, Page 216, Book 6597, Page 218, Book 6597, Page 220, Book 6597, Page 222 and Book 6597, Page 224.

Affects Parcel A only

Claims of Liens filed June 16, 1998 in Mortgage Book 6598, Page 15, Book 6598, 17, Book 6598, Page 19, Book 6598, Page 21, Book 6598, Page 23, Book 6598, Page 25, Book 6598, Page 27, Book 6598, Page 29, Book 6598, Page 31, Book 6598, Page 33, Book 6598, Page 35, Book 6598, Page 37, Book 6598, Page 39, Book 6598, Page 41, Book 6598, Page 43, Book 6598, Page 45, Book 6598, Page 47, Book 6598, Page 49, Book 6598, Page 51, Book 6598, Page 53, Book 6598, Page 55, Book 6598, Page 57, Book 6598, Page 59, Book 6598, Page 61and Book 6598, Page 63.
NOTE:  Escrow being held for the same against final disposition.

**NOTE: Unless Schedule B Part II is attached there are no subordinate matters that affect the title to the estate or interest referred to in Schedule A.**

Issued by:
**Horizon Title Agency**
**65 State Highway 4 - Suite 3**
**River Edge, NJ 07661**
**Telephone: 201-226-0096 Fax: 201-226-0093**

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE B

## PART II

**Policy Number** 72107-2834094

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to lien or charge of the insured mortgage upon said estate or interest:

NONE

COUNTERSIGNED

Authorized Signature

Issued by:
**Horizon Title Agency**
**65 State Highway 4 - Suite 3**
**River Edge, NJ 07661**
**Telephone: 201-226-0096 Fax: 201-226-0093**

Loan Policy

ESX-L-008523-19   11/18/2019 6:50:48 PM   Pg 1 of 2 Trans ID: LCV20192127095

# Civil Case Information Statement

### Case Details: ESSEX | Civil Part Docket# L-008523-19

**Case Caption:** RD LEGAL FUNDING PAR TNERS, LP  VS
CHICAGO TITLE

**Case Initiation Date:** 11/18/2019

**Attorney Name:** JENNIFER SUH

**Firm Name:** HUGHES HUBBARD & REED, LLP

**Address:** ONE BATTERY PARK PLAZA
NEW YORK NY 10004

**Phone:** 2128376000

**Name of Party:** PLAINTIFF : RD LEGAL FUNDING
PARTNERS, LP

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
       **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
       **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO      **Title 59?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

11/18/2019
Dated

/s/ JENNIFER SUH
Signed

Jennifer Suh (Attorney ID No: 041442011)
Terence Healy (to be admitted *pro hac vice*)
Kenneth M. Katz (to be admitted *pro hac vice*)
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Fax: (212) 422-4726
jennifer.suh@hugheshubbard.com

*Attorneys for Plaintiffs*
RD Legal Funding Partners, LP and RD Legal Funding, LLC

| | |
|---|---|
| RD LEGAL FUNDING PARTNERS, LP and RD LEGAL FUNDING, LLC, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: ESSEX COUNTY |
| Plaintiffs, | Docket No.: ESX-L-008523-19 |
| v. | **CIVIL ACTION** |
| CHICAGO TITLE  INSURANCE COMPANY, | **ACKNOWLEDGMENT OF SERVICE** |
| Defendant. | |

To:    Jennifer Suh, Esq.

Pursuant to *R.* 4:4-6 of the Rules Governing the Courts of the State of New Jersey, I, Michael R. O'Donnell, Esq. of Riker Danzig, hereby acknowledge service by electronic mail of the annexed Summons and Complaint, Case Information Statement, and Tracking Assignment Notice on this _21_ day of _November_, 2019.

Michael R. O'Donnell
**RIKER DANZIG**
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Tel: (973) 538-0800
modonnell@riker.com

*Attorneys for Defendant*
Chicago Title Insurance Company